## 44191. PHOENIX INSURANCE COMPANY v. AETNA CASUALTY & SURETY COMPANY et al.

WHITMAN, Judge. The Phoenix Insurance Company (hereafter called Phoenix or plaintiff) brought a three-count complaint against the Aetna Casualty & Surety Co. (hereafter called Aetna). Aetna made a motion to dismiss the complaint on all counts which the trial court sustained. This action by the trial court is appealed from and enumerated as error.

All counts of the complaint address themselves to a certain policy of insurance. Count 1 of the complaint is an action on the policy or contract. Count 2 seeks reformation of the contract, in certain regards, but the issues raised by the dismissal of this count have been withdrawn from our consideration by appellant. Count 3 of the complaint is couched in tort. *Held:*

1. We deal first with Count 1 and what it discloses. The policy upon which Phoenix brings the action is a policy of fidelity insurance, No. 11BY794, issued by Aetna, not to Phoenix, but to the H. M. Hamilton & Co., Inc. (hereafter called Hamilton Co.). The policy was issued on May 23, 1963, and states on its face that Hamilton Co. is the insured. The policy by its terms insures Hamilton Co. against loss of its money, securities and other property through any fraudulent or dishonest acts of any of its employees up to the policy amount, subject to expressed conditions and limitations.

On September 20, 1963, a typewritten "Loss payee endorsement" was attached to the policy. This attachment reads in full as follows:

"It is agreed that any loss payable hereunder shall be paid to the Phoenix Insurance Company, Hartford, Connecticut (hereinafter referred to as Phoenix) for the use and benefit of the Phoenix and the Florists' Mutual Insurance Company, Edwardsville, Illinois (hereinafter referred to as Florists), for such loss as the Phoenix and Florists may sustain through their interest in the obligatory first surplus fire and inland marine treaty of the Hamilton Treaty Reinsurance Group.

"It is further agreed that the excess of any loss remaining after Phoenix and Florists are satisfied, to the extent of the loss giving rise to the payment hereunder, shall be apportioned by Phoenix between the members of the Hamilton Facultative Reinsurance Group and/or Hamilton Treaty Reinsurance Group.

"It is finally agreed that failure on the part of Aetna to follow the above described method of payment shall in no way affect their liability hereunder. Policy No. 11BY794. Effective 9/20/63. The Aetna Casualty and Surety Company, by S/William L. Hix, Resident Vice President."

The action brought by Phoenix is by Phoenix in its own behalf and for the use and benefit of those referred to above in the loss payee endorsement. Hamilton Co. is not in any wise a party to the complaint.

The ground of Aetna's motion to dismiss Count 1 was for failure to state a claim upon which relief can be granted, because there is, inter alia: (1) No standing in plaintiff to bring the action, being neither the insured nor the insured's assignee; (2) no allegation that Hamilton Co., the insured, had sustained a loss; (3) failure to allege compliance with certain conditions precedent contained in the policy sued upon; and (4) failure to state with particularity the circumstances constituting the alleged fraud alluded to, in violation of Section 9 (b) of the Civil Practice Act.

Aetna also moved the trial court to dismiss Count 1 for failure to join Hamilton Co., the named insured, as an indispensable party.

This case is before us solely on the sufficiency of the pleadings and the exhibits attached thereto, and we may not go outside their contents in deciding the issue before us. The complaint

contains allegations of the relationship which allegedly exists between Aetna, Phoenix (and those for whose benefit it brings the action), and Hamilton Co.

It appears from reading one of the exhibits attached to the complaint that numerous insurance companies, on the one hand, and Hamilton Co., on the other, by virtue of one written agreement executed simultaneously between them all, consummated a business arrangement. That is, the numerous insurance companies, referring to themselves individually as "members" and collectively as "The Hamilton Treaty Reinsurance Group" or "Group," authorized Hamilton Co. to bind and write "reinsurance" for the "Group" at rates to be determined by Hamilton Co. for the types of risks and perils set forth elsewhere in the agreement. Phoenix is a member of the "Group."

There is another exhibit attached to the complaint which is another business agreement very similar to the one just described. In this agreement the member insurance companies refer to themselves collectively as "The Hamilton Facultative Reinsurance Group" or "Group," and authorize Hamilton Co. to bind and write reinsurance at rates to be determined by Hamilton Co. for the types of risk and peril defined in the agreement. The Florists' Mutual Insurance Company, referred to in the loss payee endorsement of the policy sued upon, is a member of this "Group."

According to the allegations Hamilton Co. came into possession of many thousands of dollars in premiums and funds belonging to the member companies of the "Groups"; that Aetna knew, at the time the policy and the endorsements were issued, of the nature and character of the business of Hamilton Co. and of the existence of the aforementioned "Groups" and of the interest of the "Group" insurance companies in the honesty of Hamilton Co. and in its employees; that it came to plaintiff's attention that circumstances had arisen which might give rise to a claim under the policy, to wit, that moneys, assets and funds belonging to plaintiff and other member insurance companies of the "Groups" may have been unlawfully diverted (embezzled or stolen) by Hamilton Co. or by one of its employees acting alone or in collusion with others; and that Aetna was immediately notified of the existence of such circumstances.

It is further alleged that plaintiff, for the use and benefit of

itself and "Group" members, made a claim upon Aetna under the policy, which was rejected by Aetna by letter dated November 18, 1965. A copy of the letter is attached to the complaint as an exhibit. Aetna, in rejecting the claim, states that: "[O]ur bonds are contracts between Hamilton & Co., Inc. and Aetna. Our only obligation is to indemnify Hamilton & Co., Inc. for any loss through employee dishonety sustained within the terms and conditions of the bonds. Only the insured has rights under the contracts and we will not entertain claims by others."

2. Phoenix and those on whose behalf it brings the action on the contract, have no connection with the contract except by virtue of the typewritten loss payee endorsement which is attached to the policy. The contents of the endorsement have previously been set forth in full.

Phoenix has properly and respectfully called the court's attention, with numerous applicable and supporting authorities in its briefs, to the superior position which typewritten material, such as the endorsement here involved, commands over the printed material of a form contract *where there are conflicts between the two.* And we are also reminded by Phoenix of the rules of construction of contracts in cases of ambiguity; of the rule favoring the finding of a contract rather than a forfeiture; and of the rule requiring construction in favor of the insured and against the insurer whenever construction is required.

Urging the court to be mindful of all these last mentioned considerations, the appellant takes the following stated position.

"Phoenix contends that the policy of insurance with its typewritten rider makes Phoenix the insured and that the effect of the typewritten rider is to eliminate H. M. Hamilton & Co., Inc., named in the printed form as the insured, as insured and to substitute the name of Phoenix for that of H. M. Hamilton & Co., Inc., shown on page 1 of the policy so that when on subsequent pages of the policy the word 'insured' is used, this word has reference to Phoenix (and the members of the two Hamilton Pools) as the insured. . .

"The policy and typewritten rider afford direct coverage to plaintiffs. . .

"The typewritten rider served two principal functions: (1) It changed and modified the terms and provisions of the standard printed form of policy customarily used and substituted

Phoenix as the insured in the place of the named insured in the standard printed form."

We simply cannot agree. "The contract as a whole must be looked to in arriving at the construction of any part." *Cotton States Mut. Ins. Co. v. Hutto*, 115 Ga. App. 164, 166 (154 SE2d 375), and citations; *Moore v. Allstate Ins. Co.*, 108 Ga. App. 60 (1) 131 SE2d 834). We find no ambiguities in any part of the contract. As we read the plain language of the policy, including the plain language of the typewritten endorsement, Hamilton Co. is the insured and any loss sustained by Hamilton Co. *within the coverage of the policy* is payable to Phoenix. Otherwise stated, Phoenix is not the insured; Hamilton Co. is the insured; but any and all loss which Hamilton Co. has a right to recover under the policy is payable to Phoenix.

But our failure to uphold this particular contention is not fatal to Phoenix. The legal position of a loss payee in a loss payable clause must be considered. Such clauses are in common use in fire insurance policies which protect a particular property in which several parties may have some interest, e.g., mortgaged property. The legal effect of such clauses with regard to a loss payee's position, usually a mortgagee, is discussed in 5 Appleman, Insurance Law and Practice, §§ 3335, 3401-3407 (1945). Without getting into a detailed discussion here regarding the language used and the distinctions which have arisen regarding such clauses, suffice it to say that under one type of clause the loss payee's rights are wholly derivative from those of the insured, while in the other type a separate policy of insurance is deemed created between the insurer and the loss payee, i.e., the loss payee is also an "insured" under the policy, and may enforce the contract in that capacity.

Any analysis by analogy between the endorsement under consideration and the type of loss payable clauses just referred to, we believe supports our view that Phoenix does not occupy any position of "an insured" under the policy as a whole. Rather it supports what we have already deduced from the plain language of the policy as a whole, namely that Phoenix is in the position of "loss payee" only, with a right to payment of any amount to which Hamilton Co. is entitled to recover under the policy.

3. We are now at one of the crucial issues involved in the case.

Does a mere loss payee under an insurance contract have standing to bring a suit on the contract in its own name only, i.e., a suit against the insurer in which the insured, under whom the payee's right to payment is derived, is not a party? "[A] payee under a loss payable clause may, by the overwhelming weight of authority, sue in his own name to recover a loss occurring under a policy of property insurance." 20A Appleman, Insurance Law and Practice, § 11749 (1963). How does this proposition square with what was said in *Simmons v. American Sec. Ins. Co.*, 107 Ga. App. 364 (130 SE2d 351): "Where by the terms of a contract of . . . insurance the loss is payable to the named insured and a named mortgagee loan company 'as interest may appear,' the insured may not, over timely special demurrer, sue in his own name to recover the loss to the exclusion of the mortgagee." This proposition poses no difficulty in the present case. The insured has no interest in anything which is payable. Only the loss payee is concerned. In short, there is no "as interest may appear" problem. See also *Trust Co. of Ga. v. Scottish Union &c. Ins. Co.*, 119 Ga. 672 (46 SE 855).

But there is yet another proposition to consider. "[A]ll persons interested in the contract of insurance should be joined in order properly to adjudicate the question of liability or non-liability of the insurer. *Fireman's Ins. Co. v. White*, 181 Ga. 759 (184 SE 316)." *Ga. Cas. &c. Co. v. Pincus*, 89 Ga. App. 836 (81 SE2d 527). By the terms of the loss payment endorsement in the present case, if Aetna is *liable to Hamilton Co.*, its liability is discharged when payment is made to the loss payees. It may be true that Hamilton Co. could bring the action, but it could do so only for the benefit of the loss payees. Thus the question of liability or non-liability of the insurer can finally be adjudicated in the present action.

Thus we are of the view that Phoenix has standing to bring the action, and also that Hamilton Co. is not an indispensable party.

4. What has been said has significance only in respect of the right of plaintiff to bring and maintain the suit. It is to be taken in no sense as indicative of its right to prevail or recover the judgment it seeks. This is, of course, a *matter of proof* of many facts, including proof that Hamilton Co. has suffered a loss insured against by the policy, in particular, a loss of its "money, securities and other properties . . . through

any fraudulent or dishonest act or acts committed by any of . . . [its] employees, acting alone or in collusion with others."

At this point it becomes necessary to discuss one of Aetna's contentions in its motion to dismiss, namely that the complaint contains no allegation that Hamilton Co., the insured, had sustained a loss. The complaint alleges that "H. M. Hamilton & Co., Inc. . . . through its dishonest and fraudulent acts or the fraudulent, dishonest acts of its employee, H. M. Hamilton, Jr., acting alone or in collusion with others embezzled, stole and unlawfully extracted or diverted funds belonging to plaintiff . . . in the custody, care and control, and being held by H. M. Hamilton & Co., as a fiduciary, in an amount of $1,000,000 and upwards." Query whether this, if true, constitutes a *loss* to Hamilton Co.? It would depend on the exact nature of the relationship between plaintiff and Hamilton Co. If the relationship was that of bailor-bailee, then Hamilton Co. would not be accountable—hence *no loss*—unless it had failed to exercise the degree of care required of it; the degree of care depending upon the nature of the bailment. On the other hand, if the relationship between plaintiff and Hamilton Co. was that of debtor-creditor, then Hamilton Co. would be accountable—hence *a loss*—notwithstanding embezzlement, theft, etc. But all of this is neither here nor there at this point. What is controlling now is that we must, under the Civil Practice Act, construe the complaint liberally in favor of the pleader. "The motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim." *Harper v. DeFreitas,* 117 Ga. App. 236, 238 (160 SE2d 260). "If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." *White v. Augusta Motel Hotel &c. Co.,* 119 Ga. App. 351 (167 SE2d 161). We think the allegations are sufficient to withstand the motion to dismiss on this ground.

5. There is no merit in the motion to dismiss the action on the contract on the ground that the complaint fails "to state with particularity the circumstances constituting the alleged fraud relied upon." The Civil Practice Act (*Code Ann.* § 81A-109

(b) ; Ga. L. 1966, pp. 609, 620), states, with regard to pleading special matters, such as fraud, that: "[A]ll averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." This provision would have relevance were Aetna being sued for fraud. Aetna is being sued in Count 1 on contract.

6. There is no merit in the motion to dismiss the contract action on the ground of failure to allege compliance with certain conditions precedent contained in the policy sued upon. Aetna in particular refers to a provision in the policy that "upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the insured shall: . . . (b) file detailed proof of loss, duly sworn to, with the company within four months after the discovery of loss."

All that is required in pleading the performance or occurrence of conditions precedent are general averments to that effect. *Code Ann.* § 81A-109(c), supra. Paragraph 11 of the complaint alleges when "it came to the attention of plaintiff that circumstances had arisen which might give rise to a claim or claims under the . . . policy . . . defendant . . . was immediately notified of the existence of such circumstances." In paragraph 14 of the complaint it is alleged that a claim was made under the policy and such claim was rejected, with Aetna taking the position that plaintiff had no rights under the policy. The allegations are sufficient to comply with the pleading requirements of the Civil Practice Act in this regard.

7. Finally Aetna urges that the trial court correctly sustained its motion to dismiss Count 1 because the complaint shows on its face that the action purportedly set forth therein is barred by the contractual period of limitation of the policy. The policy provides that no action may be commenced against the insurer unless done within two years from the date when the insured "discovers the loss." Count 1 filed November 2, 1967, does allege that it came to plaintiff's attention on or about August 9, 1965; that circumstances had arisen which *might* give rise to a claim. Construing this allegation in favor of the plaintiff, it does not mean that any "loss" was discovered on August 9, 1965. Count 1 is silent as to when plaintiff actually discovered the loss. But this does not detract from its statement of a claim.

Limitation of action provisions in policies are valid. If it be

shown as a matter of fact that the loss had been discovered and no action commenced within the limitation period, then there can be no recovery. *Underwriters' Agency v. Sutherlin,* 55 Ga. 266. On the other hand, there may be circumstances in which a party will be found to have waived or be estopped to assert such a provision. *General Ins. Co. of America v. Lee Chocolate Co.,* 97 Ga. App. 588 (103 SE2d 632). If plaintiff has been delinquent in timely bringing this action and if there is no basis for a waiver or estoppel, then such could be made to appear by motion for summary judgment. See *Zappa v. Allstate Ins. Co.,* 118 Ga. App. 235 (2) (162 SE2d 911). But having regard only to the allegations of the complaint, they do not affirmatively disclose that the complaint was brought more than two years after discovery of the loss.

8. The issues raised with regard to the trial court's dismissal of Count 2, seeking reformation of the policy in certain regards, have been expressly withdrawn from our consideration.

9. Having found that Count 1, the action on contract, does state a claim for which relief may be granted, we do not reach the issue posed by the dismissal of Count 3 which presumed in its allegations that the policy and loss payee endorsement had been issued in such fashion so as to pre-empt plaintiff of any rights thereunder, and alleges that such action on the part of Aetna, in the face of its knowledge of the relationships between all the parties and of the intended protection to be effected by the policy, was negligent in issuing the policy and endorsement in the manner in which it did.

The trial court erred in granting the motion to dismiss as to Count 1.

*Judgment reversed. Jordan, P. J., concurs. Hall, J., concurs in the judgment.*

Argued January 14, 1969—Decided July 16, 1969.

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Sam F. Lowe, Jr., Navarre & Noble, Russell E. Noble,* for appellant.

*Powell, Goldstein, Frazer & Murphy, B. D. Murphy, Edward E. Dorsey, James H. Keaten, Hansell, Post, Brandon & Dorsey, Hugh M. Dorsey, Gary W. Hatch,* for appellees.