73229. CANAL INSURANCE COMPANY v. SAVANNAH BANK
& TRUST COMPANY.
(352 SE2d 835)

CARLEY, Judge.

Appellee-plaintiff Savannah Bank and Trust Company (Bank) brought the instant action, alleging that it was both the loss payee and the assignee of a claim under an insurance policy issued to one of its debtors by appellant-defendant Canal Insurance Company (Canal). The Bank sought to recover for the loss resulting from the theft of two automobiles, plus interest and attorney fees. After hearing the evidence presented at a bench trial, the trial court made findings of fact and conclusions of law and entered judgment in favor of the Bank. Canal appeals from the judgment entered in favor of the Bank.

1. The parties stipulated that a policy of insurance was in effect on December 14, 1982. The trial court found that, on that date, the two automobiles involved in the suit were stolen from the Bank's assignor-debtor by persons unknown and that such theft was, under the clear language of the policy, a covered loss. This finding is enumerated as error.

Citing *Executive Auto Leasing v. Guaranty Nat. Ins. Co.*, 170 Ga. App. 860 (318 SE2d 733) (1984), Canal urges that the only evidence adduced was that the cars had mysteriously disappeared or were missing and that such evidence was insufficient to prove a theft. However, there was testimony by the president of the Bank's assignor-debtor that the cars were taken at a particular time without his knowledge or consent. This "testimony was sufficient to make a prima facie case of loss by theft within the policy terms." *Lewis v. American Rd. Ins. Co.*, 119 Ga. App. 507, 510 (2 a) (167 SE2d 729) (1969). See also *Executive Auto Leasing v. Guaranty Nat. Ins. Co.*, supra at 863; *Sentry Ins. v. Henderson*, 138 Ga. App. 495 (226 SE2d 759) (1976); *Hanover Fire Ins. Co. v. Scroggs*, 92 Ga. App. 548 (88 SE2d 703) (1955). The Bank's evidence having made a prima facie case that the cars were stolen, "the burden was then shifted to [Canal] to bring the case within any exception of the policy by reason of which liability may have been denied." *Staten v. Gen. Exchange Ins. Corp.*, 38 Ga. App. 415, 416 (2) (144 SE 53) (1928). Since Canal introduced no testimony or other evidence to carry this burden, the trial court's finding was not erroneous.

2. The trial court found that the only defenses advanced by Canal at trial were "allegations of rumors . . . and non-material technicalities under the policy." Canal enumerates the trial court's finding in this regard as erroneous, first asserting that, under the evidence, proper notice of loss was never given in compliance with the requirements of the policy.

The policy specified that, in the event of loss, the named insured was to "give notice thereof as soon as practicable to the company or any of its authorized agents and also in the event of theft or larceny to the police. . . ." The evidence was clearly sufficient to show full compliance with this requirement. However, the policy further provided that there would be "file[d] with the company, within 91 days after loss, [a] sworn proof of loss in such form and including such information as the company may reasonably require. . . ." Canal urges there was no timely compliance with this requirement. "[A] mere failure to furnish [to the insurer] proper proofs of loss [within the period specified in the policy] will not work a forfeiture of the policy unless there is an express stipulation to that effect. [Cits.]" *Progressive Mut. Ins. Co. v. Burrell Motors*, 112 Ga. App. 88 (1) (143 SE2d 757) (1965). See also *Parris v. Great Central Ins. Co.*, 148 Ga. App. 277 (1) (251 SE2d 109) (1978). There was no such express stipulation in the instant policy. Moreover, Canal's own failure to furnish proof of loss forms in a timely manner after receiving written notice of the loss from both its own adjuster and the Bank's assignor-debtor would constitute a waiver of strict compliance with this requirement. See OCGA § 33-24-39; *Buffalo Ins. Co. v. Star Photo Finishing Co.*, 120 Ga. App. 697 (2 b) (172 SE2d 159) (1969). Once the proof of loss forms were finally provided by Canal on January 31, 1985, both the Bank and its assignor-debtor filed sworn proof of loss statements within 91 days.

Canal rejected the proof of loss submitted by the Bank's assignor-debtor and contends that it was justified in doing so because the addition thereon of the words "to the best of my personal knowledge" was an unacceptable "qualification" of the ostensibly sworn statement. However, the Bank's assignor-debtor was a corporation and the proof of loss form was signed by its secretary. The testimony of a corporate officer *must* be based on his own personal knowledge. See generally *Lubbers v. Tharpe & Brooks*, 160 Ga. App. 709, 711 (288 SE2d 54) (1981). The trial court thus correctly held that Canal's rejection of the proof of loss was without justification.

Canal's further contention that the Bank and its assignor-debtor failed to cooperate in the investigation and thus did not satisfy a prerequisite to recovery under the policy is not supported by the record. Accordingly, the trial court's ultimate conclusion that Canal's defenses related solely to "technical or inconsequential" noncompliance

with the policy requirements was not erroneous. See *H. Y. Akers & Sons v. St. Louis Fire &c. Ins. Co.*, 120 Ga. App. 800, 802 (1) (172 SE2d 355) (1969).

3. Canal contests as erroneous the finding of the trial court that the evidence established a loss of $15,600 and further urges error in the admission of hearsay evidence concerning "Blue Book" values to prove fair market value.

Two witnesses gave opinion testimony as to value. Neither based his opinion on "Blue Book" values, but each agreed that his personal evaluation fell within the range of "Blue Book" valuations. "Direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion." OCGA § 24-9-66. Both witnesses were clearly qualified to form their own opinions and their further testimony regarding "Blue Book" value was not a ground for objection. *Burch v. Lawrence*, 150 Ga. App. 351 (1) (258 SE2d 35) (1979). The evidence was sufficient to calculate the amount of damages and, the amount awarded was within the range of the evidence adduced. We find no error. Cf. *B & L Svc. Co. v. Gerson*, 167 Ga. App. 679 (4) (307 SE2d 262) (1983); *Smith v. Gen. Fin. Corp.*, 143 Ga. App. 390 (1) (238 SE2d 694) (1977).

4. Canal contends that the Bank cannot recover because no valid assignment of the policy occurred. Canal relies upon the general policy provision that an assignment of interest would not bind it until its consent was endorsed thereon. "It is, however, a general proposition that ' "[a]ny provision of a policy made for the company's benefit may be waived by the company either expressly or impliedly by the company's action." [Cits.]' [Cit.] Provisions which require the consent of the insurer to an assignment of the policy are clearly for the insurer's benefit — such assignments change the risk which the insurer has assumed under the terms of the policy. [Cit.]" *State Farm Fire &c. Co. v. Mills Plumbing Co.*, 152 Ga. App. 531, 533 (1) (263 SE2d 270) (1979). Canal's prolonged course of conduct in dealing with the Bank, both before and after it had been assigned all its debtor's right, title and interests under the insurance policy, was " 'conduct inconsistent with an intention to enforce strict compliance with the condition, by which the insured is led to believe the insurer does not intend to require such strict compliance. [Cits.]' [Cit.]" *Great Southwest &c. Ins. Co. v. Sprinkler Contractors*, 168 Ga. App. 104, 105 (308 SE2d 204) (1983). Moreover, the assignment was made subsequent to the date of the theft. "Where insured property is [lost], the policy after such [loss] becomes a mere chose in action, and the policy and interest in the proceeds can be assigned just as any other chose in action. [Cits.]" *Pacific Ins. Co. v. R. L. Kimsey Cotton Co.*, 114 Ga. App. 411, 415 (3)

(151 SE2d 541) (1966). "Georgia law permits a debtor to prefer one creditor over another and to make assignments to that end, so long as the transfer is made in good faith and does not benefit the debtor. [Cits.] In the instant case the assignments to [the Bank] appear to have been made in accordance with this statutory authorization." *Bank of Cave Spring v. Gold Kist*, 173 Ga. App. 679, 681 (327 SE2d 800) (1985).

In addition, the Bank does not occupy merely the status of an assignee. It also brought suit seeking payment under the policy in its capacity as loss payee. Canal is correct that where, as here, the policy of insurance contains an "open" mortgage clause, any breach of the policy terms by the Bank's debtor sufficient to cause it to lose its right to claim under the policy would also operate to preclude a recovery on the policy by the Bank. See generally *Southern States Fire &c. Ins. Co. v. Napier*, 22 Ga. App. 361 (1) (96 SE 15) (1918). There is, however, no basis for applying this principle in the case at bar. There is no evidence that the Bank's debtor committed such a breach. The relevant inquiry in determining the Bank's standing to sue in its own right as loss payee is whether the debtor had "no interest in anything which [was] payable[, in which case o]nly the loss payee [was] concerned." *Phoenix Ins. Co. v. Aetna Cas. &c Co.*, 120 Ga. App. 122, 127 (3) (169 SE2d 645) (1969). There was evidence of record to show that the debt owed to the Bank by its debtor was, at all pertinent times, in excess of the insurance proceeds being sought. Thus, the debtor had no interest in the insurance proceeds, only the Bank was "concerned" and, consequently, the Bank had standing to sue in its own right. See generally *Trust Co. of Ga. v. Scottish Union &c. Ins. Co.*, 119 Ga. 672 (46 SE 855) (1903). Accordingly, even assuming that the Bank were not entitled to recover as an assignee, it was clearly entitled to recover as the loss payee.

5. Canal enumerates as erroneous the trial court's imposition of bad faith attorney fees pursuant to OCGA § 33-4-6. The statutory right to seek attorney fees is available to the "holder of the policy. . . ." Contrary to Canal's assertions on appeal, the Bank did not base its right to seek attorney fees by assignment from its debtor but by virtue of its own status as a "holder of the policy." The statutory right to seek attorney fees accrued directly to the Bank as the result of Canal's refusal to pay the claim made by the Bank itself in its capacities as assignee thereof and as loss payee under the policy. See *Lumbermen's Underwriting Alliance v. First Nat. Bank &c. Co.*, 100 Ga. App. 217 (110 SE2d 782) (1959).

"In reviewing a judgment against an insurer under OCGA § 33-4-6 for bad faith penalties and attorney fees for refusing to pay a claim, '[t]he proper rule is that the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that

there was a reasonable defense which vindicates the good faith of the insurer.' [Cits.]" *Georgia Farm &c. Ins. Co. v. Bestawros*, 177 Ga. App. 667-668 (1) (340 SE2d 645) (1986). " '[A] refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there [are] any reasonable grounds for an insurer to contest the claim, there is no bad faith. [Cits.]' [Cit.]" *Progressive Cas. Ins. Co. v. Avery*, 165 Ga. App. 703, 706 (1) (302 SE2d 605) (1983). The evidence was sufficient to support the trial court's finding that Canal failed to establish a reasonable ground for contesting the claim and thus, had acted in bad faith in refusing to make payment.

6. The Bank's motion for 10% frivolous appeal penalty is denied.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED JANUARY 15, 1987.

*Harry W. Bassler*, for appellant.

*Roland B. Williams, W. Brooks Stillwell III, J. Michael Hall*, for appellee.