No. 86,880

TIMOTHY BOLZ, D.C., *Appellant*, v. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, *Appellee*.
(52 P.3d 898)

Opinion filed August 23, 2002.

*Judy Pope Edwards*, of Dickson & Pope, P.A., of Topeka, argued the cause, and *James M. Crowl*, of the same firm, was with her on the brief for appellant.

*William A. Larson*, of Gehrt & Roberts, Chartered, of Topeka, argued the cause, and *Timothy A. Shultz*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Medical practitioner Dr. Timothy Bolz filed a breach of contract action, based on an insured's assignment of her right to receive payment for medical services rendered under an automobile insurance policy. The insurer had claimed its contract prohibited its insured from assigning the claim. The district court granted summary judgment to the insurer. Dr. Bolz appealed, claiming that Kansas statutes and Kansas public policy require that the right to receive payment for necessary medical treatment be assignable and that the language of the insurance policy was ambiguous.

The parties stipulated that Georgia Emerson was involved in an automobile collision on July 1, 1997. Emerson was insured by State Farm Mutual Automobile Insurance Company (State Farm) on the date of the collision. The insurance policy provided Emerson with personal injury protection (PIP) benefits as required by K.S.A. 40-3107. It is important to note that State Farm does not repair automobiles or provide medical services, and its policy did not require

the insured to use specified individuals or companies to perform these services.

Emerson sought treatment from Dr. Bolz, a chiropractor, for injuries she sustained in the collision. On July 26, 1997, Emerson signed an "Irrevocable Assignment, Lïen and Authorization" form which assigned to Dr. Bolz her right to receive the PIP benefits under the policy. On August 6, 1997, Dr. Bolz forwarded the document of assignment to State Farm and demanded payment in the amount of $3,359, the cost of the medical expenses incurred by Emerson.

The insurance policy, under the section entitled "Conditions," contained the following standard language regarding policy changes: "b. Change of Interest. No change of interest in this policy is effective unless we consent in writing."

Emerson did not obtain written consent from State Farm to assign to Dr. Bolz her claim for reimbursement for medical services. When State Farm refused to pay Dr. Bolz for the medical services rendered to its insured, Dr. Bolz brought this action based on the assignment.

The district court determined that the change in interest clause was unambiguous and enforceable against Dr. Bolz. In his memorandum decision and order, the district judge stated:

"While the policy clearly prohibits assignments without consent, the Court must determine if non-assignability clauses are valid when used in an insurance contract. In *St. Francis Regional Medical Center v. Blue Cross Blue Shield of Kansas,* 810 F. Supp. 1209 (D. Kan. 1986), the Kansas Federal District Court held that a non-assignability clause in an insurance policy in general was valid and enforceable and not against public policy. The *St. Francis* Court held that 'Kansas courts have repeatedly recognized that the freedom to contract is an important public policy.'

"In a case directly on point, the Colorado Supreme court rejected the 'argument that a non-assignability clause in an insurance policy is unenforceable as a matter of law against post-loss assignment of policy benefits.' *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Company,* 874 P.2d 1049, 1054 (Colorado 1994). In the *Parrish Chiropractic* case, the insurance policy contained a clause which stated, 'Interest in this policy may not be assigned without our written consent.' The insurance company did not provide its written consent to its insured to assign the proceeds of the coverage to the chiropractic clinic. The Court held that the provision was enforceable and because written consent was not provided the assignment was invalid.

"There is a clear prohibition in the State Farm policy of Georgia Emerson precluding assignments without written consent of Defendant. No consent was provided, therefore the assignment to Bolz Chiropractic Clinic, P.A., is void and unenforceable."

Dr. Bolz appealed. The case was transferred from the Court of Appeals on our own motion pursuant to K.S.A. 20-3018(c).

Since this appeal arises from summary judgment on stipulated facts, this court's review is de novo. *Veatch v. Beck,* 252 Kan. 1081, 1082, 850 P.2d 923 (1993); *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.,* 250 Kan 754, 762, 863 P.2d 355 (1992). Summary judgment is appropriate when all of the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Deisher v. Kansas Dept. of Transportation,* 264 Kan. 762, 767, 958 P.2d 656 (1998); *Kerns v. G.A.C., Inc.,* 255 Kan. 264, 268, 875 P.2d 949 (1994).

Before we discuss the arguments of each party, it is necessary to define a chose in action. A chose in action is the right to bring an action to recover a debt, money, or thing. Black's Law Dictionary 234 (7th ed. 1999). It has long been recognized in Kansas that all choses in action, except torts, are assignable. See *Alldritt v. Kansas Centennial Global Exposition,* 189 Kan. 649, 657, 371 P.2d 181 (1962); *National Bond & Investment Co. v. Midwest Finance Co.,* 156 Kan. 531, 535, 134 P.2d 639 (1943); *McCrum v. Corby,* 11 Kan. 464, 470 (1873); cf. *Augusta Medical Complex, Inc. v. Blue Cross,* 230 Kan. 361, 363-64, 634 P.2d 1123 (1981) (where defendant nonprofit hospital service corporation's nonassignment clause was upheld as valid and enforceable despite court's recognition of the general rule that choses in action are fully assignable). Emerson's assignment of her right to be paid for the medical services rendered is a chose in action.

Dr. Bolz contends that State Farm's insurance policy's change of interest clause is ambiguous and, as now interpreted by State Farm, violates the public policy that choses in action are assignable. Additionally, Dr. Bolz asserts that the Kansas Legislature has codified the right of Kansas policyholders to assign both the benefits and claims arising from accident and health insurance contracts, citing K.S.A. 40-439 and K.S.A. 40-440.

State Farm argues the public policy favoring free alienation of choses in action must be balanced against another public policy, the freedom of contract, and that the public policy of freedom of contract is superior to the free assignability of choses in action. To support this argument, State Farm relies upon *St. Francis Reg. Med. Ctr. v. Blue Cross*, 810 F. Supp. 1209 (D. Kan. 1992), *aff'd* 49 F.3d 1460 (10th Cir. 1995), and *Parrish Chiropractic v. Progressive Cas.*, 874 P.2d 1049 (Colo. 1994). Additionally, State Farm asserts that K.S.A. 40-439 and K.S.A. 40-440 do not apply to automobile insurance policies because those statutes pertain to life insurance policies and accident and health insurance policies. To support this assertion, State Farm notes that no restriction on non-assignability appears in the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*, and concludes that if the legislature intended such a restriction it would have specifically provided for such in the KAIRA.

### Public Policy

Public policy consists of the "principles and standards regarded by the legislature or by the courts as being of fundamental concern to the state and the whole of society." Black's Law Dictionary 1245 (7th ed. 1999). The declaration of public policy is primarily a legislative function. *Noel v. Menniger Foundation*, 175 Kan. 751, Syl. ¶ 4, 267 P.2d 934 (1954). Where the legislature declares the public policy and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for the legislature and not for the courts. *State ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 695, 273 P.2d 198 (1954); see *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 808, 752 P.2d 645 (1988).

In *McCrum,* this court recognized that under the common law no chose in action was negotiable or even assignable. In equity, every chose in action, except a tort, was assignable, but it was assignable subject to all equities that might be set up against it. The *McCrum* court stated: "Under our statutes every chose in action is assignable, except a tort, the same as it was in equity; (Civil Code, § 26)." 11 Kan. at 470.

This concept of assignability of choses in actions remains ingrained in the public policy of this state. See *Augusta Medical*, 230 Kan. at 364; *Alldritt*, 189 Kan. at 657. In addition to the public policy favoring assignability of choses in action, we note that restraints on the alienation of property are strictly construed against the party urging the restriction. See *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 669, 876 P.2d 1362 (1994); *Wood v. Hatcher*, 199 Kan. 238, 243, 428 P.2d 799 (1967).

Dr. Bolz points out that the assignment was post-loss. When Emerson assigned her claim arising under the policy to Dr. Bolz, the risk to State Farm was fixed because the loss had already occurred. To support his argument, Dr. Bolz cites to the Restatement (Second) of Contracts, § 322 (1979), which provides:

"(1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition.

"(2) A contract term prohibiting assignment of rights under the contact, unless a different intention is manifested,

(a) does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation."

State Farm asserts that Section 322 does not restrict the freedom of contract by referring to the comment to that section, which states: "In the absence of statute or other contrary public policy, the parties to a contract have power to limit the rights created by their agreement. The policy against restraints on the alienation of property has limited application to contractual rights." This language, however, is consistent with Dr. Bolz' argument that Kansas *public policy* and *statutory provisions* prohibit nonassignability and prevail over freedom of contract.

For further support, Dr. Bolz also cites to 3 Couch on Insurance 3d § 35:7 (1995), which states:

"Although there is some authority to the contrary, the great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply only to assignments before loss, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy,

as distinguished from a claim arising thereunder, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim. The purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity."

In *Augusta*, this court discussed general rules of assignment, noting:

"As a general rule, a contract is not assignable where the nature or terms of the contract make it nonassignable. 6A C.J.S., Assignments § 30, p. 630. But, logically, if the parties are to be held to have agreed to make the contract or particular rights thereunder nonassignable, then it should have been a negotiated contract. This distinction is perhaps one of the major reasons that assignments of insurance benefits after loss are generally enforced despite contractual provisions precluding assignment. See 43 Am. Jur. 2d, Insurance §§ 689-690, pp. 686-688; 46 C.J.S., Insurance § 1152, p. 35, § 1190, p. 106; Annot., 122 A.L.R. 144 (1939).

"Free assignment of chooses in action is considered to be a matter of public policy. However, other considerations of public policy may in particular instances compete with and override the desirability of free alienation of chooses in action. By illustration, the potential for hardship to the working person and his or her dependents has given rise to K.S.A. 16a-3-305, which generally renders assignments of wages unenforceable. See also, K.S.A. 44-514, which precludes assignment of workmen's compensation claims or awards." 230 Kan. at 364.

In *Augusta*, this court upheld the nonassignment of benefits clause policies issued by Blue Cross. At that time, Blue Cross was a nonprofit hospital service corporation, which along with Blue Shield, a nonprofit medical service corporation, was created by statute to provide health insurance to Kansas residents at the lowest financially sound rates. The court reasoned that the containment of health care cost was a matter of vital public interest and policy, noting that Blue Cross had a legislative mandate to control costs and that if Blue Cross were compelled to honor assignments to nonmember hospitals there would be no incentive for a hospital to become a participating member. 230 Kan. at 365.

The public policy in favor of the assignability of choses in action did not prevail in *Augusta* because the legislature had enacted laws favoring health care cost control and insurance contracts that required the insureds to use the services of specified member health

care providers and member hospitals. It is important to note that neither of these factors is present in this case.

The enforceability of a nonassignment clause regarding PIP benefits in an automobile insurance policy is an issue of first impression. For support, the parties cite to case law from other jurisdictions.

Not cited by either party, however, is the case of *Santiago v. Safeway Insurance Co.*, 196 Ga. App. 480, 396 S.E.2d 506 (1990). In *Santiago,* the Georgia court held that a health care provider could maintain an action for benefits when assigned no-fault benefits due under the insurance policy despite a nonassignment clause. Dr. Santiago provided medical care to three patients in jured in automobile accidents. All three executed assignments of their rights to insurance proceeds to the doctor. Safeway insured all three.

Safeway's policy provided that the insureds' " 'rights and duties under this policy may not be assigned without our written consent.' " 196 Ga. App. at 480. Safeway did not consent to the assignment of benefits to Dr. Santiago. Safeway received notification of the assignments but, nevertheless, paid benefits directly to the insureds. Dr. Santiago was not paid. The *Santiago* court stated:

" 'After [a] loss, the claim of the insured, like any other chose in action, could be assigned without in any way affecting the insurer's liability. It has been held, rightly we think, that a condition in a policy of . . . insurance prohibiting an assignment or transfer of the same after loss, without the consent of the insurer, is null and void, as inconsistent with the covenant of indemnity and contrary to public policy . . . . No right of the insurer being affected by the assignments of the policies, it would be a mere act of caprice or bad faith for it to take advantage of the stipulation that the transfers were subject to its consent, by withholding such consent in order to defeat the claim of the assignee. The assignments being perfectly valid without the consent of the insurer, and its rights being in no way affected thereby, the condition in question was superfluous, and the law will not tolerate its enforcement against the assignee.' (Citations omitted.) *Georgia Co-Op. Fire Assn. v. Borchardt & Co.*, 123 Ga. 181, 183-184 (51 S.E. 429) (1905). Interest in the proceeds of a policy of insurance after a loss to the insured has occurred may be assigned just as any other chose in action. *Canal Ins. Co. v. Savannah Bank, & c., Co.*, 181 Ga. App. 520 (4) (352 S.E. 2d 835) (1987); *Pacific Ins. Co. v. R.L. Kimsey Cotton Co.*, 114 Ga. App. 411 (3) (151 S.E.2d 541) (1966).

"The law of other jurisdictions appears to recognize the right of an assignee of insurance benefits to bring an action to recover payment. 'An assignment of the policy after loss, or in other words an assignment of the claim for the loss, is valid, and transfers to the assignee the right to the proceeds of the insurance. . . . Such an assignment is valid, even though the policy provides that it shall be void if assigned, either before or after the loss, without the consent of insurer, for such an assignment relates to the cause of action and not to the policy. . . . If insurer has notice of the assignment . . . and, if insurer thereafter pays the proceeds to insured or his creditors, it does not discharge itself from liability to the assignee.' 46 CJS Insurance, § 1152 (1946)." 196 Ga. App. at 481.

The *Santiago* court held that because Safeway had notice of the assignment, Safeway was liable to the assignee, Dr. Santiago, and did not escape liability by paying benefits directly to its insureds. 196 Ga. App. at 482. See *Marvin, D.C. v. State Farm Mutual Automobile Insurance Co.*, 894 S.W.2d 712, 713 (Mo. App. 1995) (where policy provided insurer could pay benefits to either insured or to person authorized by law, payment to insured after notice of assignment did not extinguish insurer's liability; assignment passes all assignor's title as interest to assignee and divests assignor of all right of control over subject matter); see also *Antal's Restaurant v. Lumbermen's Mut.*, 680 A.2d 1386, 1388-89, (D.C. App. 1996) (fire insurance policy clause restricting assignment did not limit right of assignment after loss had occurred).

State Farm relies on *St. Francis*, 810 F. Supp. 1209, to support its contention that the public policy in favor of freedom of contract is superior to the public policy in favor of free assignment of choses of action. In *St. Francis*, St. Francis Hospital requested that the federal district court, among other things, find that nonassignment clauses in policies issued by Blue Cross violated Kansas public policy in favor of free assignment of choses in action. As a nonprofit, Blue Cross was statutorily required to adopt procedures to control rising health care costs. One of the tools used by Blue Cross in accomplishing this goal was provider agreements coupled with clauses prohibiting assignment of benefits. Under this scheme, if a health care provider did not enter a provider agreement with Blue Cross and accept payment as payment in full, an insured had to first pay the provider and then seek reimbursement from Blue Cross. The *St. Francis* court noted that this system was upheld in

*Augusta* because the public policy favoring free assignability of choses in action was insufficient to overcome the legislative mandate to control medical costs that served as the purpose for the restraint. 810 F. Supp. at 1211-12.

St. Francis argued that the reasoning in *Augusta* no longer applied when Blue Cross changed its nonprofit status. The federal district court disagreed and found that nonassignment clauses continued to be a vital tool for containment of health care costs. We note that here State Farm stated that it is not attempting to control medical cost through its policy and that it does not require its insured to use the services of specified health care providers. The *St. Francis* court found the public policy supporting free assignability of choses in action to be outweighed by the public policy supporting freedom of contract and the public policy in favor of attempting to restrain the growth of health care cost. 810 F. Supp. at 1219.

The *St. Francis* court stated:

"Kansas courts have repeatedly recognized that the freedom to contract is an important public policy. State 'public policy encourages the freedom to contract, which should not be interfered with lightly.' *Miller v. Foulston, Siefkin*, 246 Kan. 450, 790 P.2d 404, 413 (1990). Absent a specific finding of unconscionability, a party is bound by an agreement fairly and voluntarily entered into, notwithstanding it was unwise or disadvantageous to him. *Corral v. Rollings Protective Services*, 240 Kan. 678, 732 P.2d 1260 (1987)." 810 F. Supp. at 1218.

State Farm also relies on *Parrish*, 874 P.2d 1049. The issue in *Parrish* is remarkably similar to the question before us. Parrish Chiropractic Centers provided health care services to Progressive Casualty Insurance Company insureds following injuries in automobile accidents. As in our case, Parrish required patients to sign an agreement assigning to Parrish their rights to receive PIP benefits. Progressive's policies contained a provision stating: " 'Interest in this policy may not be assigned without our written consent.' " 874 P.2d at 1051.

Although Progressive had honored the assignments in the past and directly paid Parrish for services provided to its insureds, Progressive changed its policy and began paying PIP benefits directly to its insureds. Progressive claimed the change occurred because

treatment from Parrish took longer and was more expensive on average than with other chiropractors, the assignments diminished Progressive's ability to control the frequency and costs of treatments, and the assignments increased its administrative costs by requiring it to deal with both the provider and its insured.

The Supreme Court of Colorado acknowledged the general rules regarding assignment of an insurance policy, specifically acknowledging the distinction made between assignments of a policy before loss and the assignment of benefits after loss. The *Parrish* court recognized that assignments of post-loss benefits have been found to be valid regardless of any nonassignment clause in the policy. However, the court noted that in recent years, courts have concluded that nonassignment clauses in group health care contracts are enforceable against post-loss assignments to health care providers. The *Parrish* court acknowledged what it called the " 'participation inducement' " rationale, *i.e.*, the only way to induce hospitals to participate in group plans is to not allow an insured to assign his or her rights under the policy, to support enforcement of nonassignment clauses in health insurance policies. It noted that the cases upholding nonassignment clauses had concluded that the general policy favoring free alienability of choses in action is overridden by the strong public policy in favor of freedom of contract and the fact *nonassignment clauses are valuable tools in controlling health care costs*. 874 P.2d at 1053-54.

According to the Colorado Supreme Court, enforcement of nonassignment clauses as against attempted post-loss assignments in cases from other jurisdictions was grounded on the "broader principle—that the public policy in favor of the freedom of contract, and the corollary right of the insurer to deal only with the party with whom it contracted, outweigh the general policy favoring the free alienability of choses in action." 874 P.2d at 1054. In reaching this decision, the *Parrish* court rationalized that "[t]o hold otherwise would be to force Progressive to deal with parties with whom it has not contracted, regardless of the fact that its policy contains an express contractual provision requiring its prior consent to any assignment of interests in the policy." 874 P.2d at 1055. We note that effective January 1, 1994, the Colorado Legislature clearly

stated its public policy by passing an amendment to the Colorado Auto Accident Reparations Act, Colo. Rev. Stat. § 10-4-701 (2001) *et seq.*, requiring insurers to allow an insured to assign payments due under the policy to a licensed hospital or other licensed health care provider for services provided to the insured that are covered under the policy. See Colo. Rev. Stat. § 10-4-708.4 (2001); 874 P.2d 1055 n.9.

Although *Parrish* is factually similar, State Farm's reliance upon it is misplaced for numerous reasons. First, the determination of whether the free assignment of choses in action is the public policy of Kansas is an issue to which case law from other jurisdictions will not afford answers. Only by looking to Kansas statutes and Kansas case law can the public policy of this state be determined. Second, without considering any statutory authority, the Colorado Supreme Court focused upon both its public policy favoring freedom of contract and of controlling health care costs in determining the validity of the nonassignment clause. See *Parrish*, 874 P.2d at 1053-54. State Farm does not argue that this is a health care cost control issue. Finally, *Parrish* conflicts with this court's recent decision in *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, Syl. ¶ 6, 44 P.3d 364 (2002), in which a unanimous court recognized that contracts that contravene the settled public policy of the state will not be enforced. See also *Levier v. Koppenheffer*, 19 Kan. App. 2d 971, Syl. ¶¶ 2, 3, 879 P.2d 40, *rev. denied* 255 Kan. 1002 (1994) (insurance is matter of contract and will be enforced as long as terms are certain and do not conflict with statutes or public policy).

Beyond freedom of contract, State Farm fails to state any overriding public policy exception to the general rule that post-loss assignments are valid even in the face of nonassignment clauses. Thus, the case is distinguishable from *Augusta Medical* and *St. Francis*. We find, therefore, under the circumstances, that the policy provision restricting the assignment of Emerson's right to collect a post-loss benefit is against the public policy of Kansas and will not be enforced.

## Statutes

It is a fundamental rule of statutory construction, to which all

other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *In re Adoption of B.M.W.*, 268 Kan. 871, 883, 2 P.3d 159 (2000); *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

In construing statutes, legislative intent is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. It is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted. *State v. Engles*, 270 Kan. 530, 533, 17 P.3d 355 (2001).

The Kansas Legislature stated the public policy against prohibiting assignment when it enacted K.S.A. 40-439 and K.S.A. 40-440.

K.S.A. 40-439 states:

"No provision in K.S.A. 40-434 and 40-435 *or any other law* shall be construed as prohibiting a person whose life is insured under a policy of group life or accident and health insurance or the policyowner of an individual life or accident and health policy from making an assignment of all or any part of his rights and privileges under such policy." (Emphasis added.)

K.S.A. 40-440 states:

"This act acknowledges, declares and codifies the existing right of assignment of interests under individual and group life and accident and health insurance policies."

K.S.A. 40-439 and 40-440 codify the right of policyholders to assign both the benefits and claims arising under individual and group life and accident and health insurance policies.

State Farm argues that these provisions do not apply to its insurance policies which are governed exclusively by the KAIRA and that if the legislature had intended other provisions applicable to medical coverage to apply to the KAIRA it would have clearly

stated that requirement. We note that K.S.A. 40-439, K.S.A. 40-440, and the KAIRA are found within the Insurance Code of Kansas, K.S.A. 40-101 *et seq.*

When enacting the KAIRA, the Kansas Legislature stated:

"The purpose of this act [KAIRA] is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein." K.S.A. 40-3102.

" 'Medical benefits' means and includes allowances for all reasonable expenses . . . for necessary health care rendered by practitioners licensed by the state board of healing arts to practice any branch of the healing arts. . . ." K.S.A. 40-3103(k).

Neither party recognizes that Article 22 of the Insurance Code of Kansas, which governs all insurance, states the uniform provisions required for all policies that include medical coverage. State Farm's policy, as required by the legislature, includes medical coverage. The stated purpose of the uniform provisions governing insurance is to

"provide reasonable standardization and simplification of terms and coverages of individual accident and sickness insurance policies . . . to facilitate public understanding and comparison, to eliminate provisions contained in individual accident and sickness insurance policies . . . which may be misleading or unreasonably confusing in connection either with the purchase of such coverages or with the settlement of claims, and to provide for full disclosure in the sale of accident and sickness coverages." K.S.A. 40-2216.

K.S.A. 40-2201 provides:

"The term 'policy of accident and sickness insurance' as used herein includes any policy or contract insuring against loss resulting from sickness or bodily injury or death by accident, or both, issued by a stock, or mutual company or association or any other insurer."

Every policy that provides accident and sickness insurance must contain certain provisions pursuant to K.S.A. 40-2203(A). In addition, K.S.A. 40-2203(B) provides that, although not required, if specific provisions are included within an accident and sickness insurance policy, the provisions must comply with the statute. Other policy provisions within an accident and sickness insurance policy are also controlled by statute.

"Other policy provisions: No policy provision which is not subject to K.S.A. 40-2203 shall make a policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the provisions thereof which are subject to this act." K.S.A. 40-2204(A).

State Farm's policy is within the statutory definition of a policy of accident and sickness insurance. See K.S.A. 40-2201(a). Provisions regarding assignment of rights under the contract are not subject to K.S.A. 40-2203. State Farm asserts that its policy contains a provision precluding assignment of rights to receive payment post-loss under the contract. Such a provision, however, is less favorable to the insured than the provisions that are covered by K.S.A. 40-2203. See *Durrett v. Bryan*, 14 Kan. App. 2d 723, 729, 799 P.2d 110 (1990), *rev. denied* 248 Kan. 995 (1991) (regulation prohibiting subrogation clause in insurance policy was statutorily authorized; subrogation provision is not subject to K.S.A. 40-2203 and is less favorable to the insured than other provisions covered in K.S.A. 40-2203).

*"Policy conflicting with this act.* A policy delivered or issued for delivery to any person in this state in violation of this act shall be held valid but shall be construed as provided in this act. When any provision in a policy subject to this act is in conflict with any provision of this act, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of this act." K.S.A. 40-2204(B).

The uniform provisions governing insurance were enacted in 1951. L. 1951, ch. 296. K.S.A. 40-439 and K.S.A. 40-440 were enacted in 1969. L. 1969, ch. 239, secs. 1, 2. The KAIRA went into effect in 1974. L. 1974, ch. 193. The purpose of the KAIRA is to provide a means of promptly compensating individuals for accidental bodily injury. K.S.A. 40-3102. At the time the KAIRA was implemented, the legislature had previously codified the right of each individual to assign his or her right to be reimbursed for medical services under accident and health insurance policies. See K.S.A. 40-439; K.S.A. 40-440. In mandating PIP benefits in the KAIRA, the legislature inserted medical coverage within automobile insurance policies, required that the expense of medical services rendered under automobile insurance policies be assignable to the healthcare provider, and limited the cost of medical services

to reasonable and customary amounts. See K.S.A. 40-3107(f); K.S.A. 40-3111(a).

The free assignment of post-loss PIP benefits was provided for by the legislature in regulating accident and health insurance policies and was also required under the uniform policy provisions. In doing this, the Kansas Legislature specifically mandated Kansas public policy. Therefore, we find that a provision within an automobile insurance policy which restricts the assignment of an insured's right to collect post-loss PIP benefits violates Kansas statutes and will not be enforced. The assignment of the insured's right to receive a post-loss PIP benefit to the medical practitioner that provided the medical services is enforceable as a matter of Kansas public policy and under the statutes of this state.

Dr. Bolz also contends the language in State Farm's policy was ambiguous. Because we find the change of interest clause unenforceable in this case, we need not reach this issue. The decision of the district court is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.█

SIX, J., dissenting: This is a K.S.A. 40-3107 motor vehicle liability insurance policy interpretation case. The policy in question, issued under the Kansas Automobile Injury Reparations Act (KAIRA), contained a nonassignability clause. The question is whether the nonassignability clause in the policy bars Dr. Bolz' claim. I would answer "yes" and affirm the district court.

On July 26, 1997, Emerson signed an "Irrevocable Assignment, Lien and Authorization" on a preprinted Bolz Chiropractic form authorizing payment of her personal injury protection (PIP) benefits to Dr. Bolz. On August 6, 1997, Dr. Bolz forwarded the as-

signment form to State Farm Mutual Automobile Insurance Company (State Farm) and made a demand for payment of medical expenses incurred by Emerson totaling $3,359.

The district court here keyed on *Parrish Chiropractic v. Progressive Cas.*, 874 P.2d 1049 (Colo. 1994), to support its rationale for denying Dr. Bolz' claim. The district judge characterized *Parrish* as "a case directly on point." Dr. Bolz does not mention *Parrish* in his appellate brief. In *Parrish*, the Colorado Supreme Court held that purported assignments of PIP benefits to a chiropractic center in the face of a policy nonassignment clause were void and unenforceable against the insurer. See 874 P.2d at 1055. The *Parrish* nonassignment clause, similar to the one in issue here, was unambiguous and enforceable against the chiropractic clinic. See 874 P.2d at 1056. *Parrish* further reasoned that the clinic was only an incidental beneficiary of the policy rather than a third-party beneficiary. Thus, the clinic was not entitled to recovery in a direct action to enforce the terms of the policy. 874 P.2d at 1056-57. The *Parrish* court noted that its decision would have limited precedential value because the Colorado Legislature amended the no-fault act to allow assignment of benefits to a licensed health care provider. 874 P.2d at 1055 n.9.

A similar amendment by the Kansas Legislature, not a court opinion, in my view, is the appropriate method for altering the KAIRA to allow the assignment of PIP benefits.

*Texas Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215 (Tex. App. 1994), and *Parkway Ins. Co. v. NJ Neck & Back*, 330 N.J. Super. 172, 748 A.2d 1221 (1998), also support State Farm's position here. As noted by the majority *Santiago v. Safeway Insurance Co.*, 196 Ga. App. 480, 396 S.E.2d 506 (1990), supports Dr. Bolz' position. I favor the analysis used in *Parrish, Texas Farmers*, and *Parkway*.

*Texas Farmers* considered a single issue: Did a nonassignment clause in an automobile policy bar the plaintiff chiropractic clinic's patient from assigning her rights to PIP benefits? The Texas Farmers' insured had assigned her rights under the policy to the chiropractic clinic without obtaining the written consent of Texas Farmers. The *Texas Farmers* court, in holding for the defendant insurance company, said: "Because we conclude the non-assign-

ment clause was valid, we reverse and render a take-nothing judgment." 880 S.W.2d at 216.

In *Parkway Insurance,* the issue was whether the prohibition against assignment of medical expense benefits contained in Parkway's automobile insurance policies was enforceable against New Jersey Neck & Back without the written consent of Parkway. The *Parkway Insurance* court concluded that New Jersey Neck & Back, the medical providers who had treated the insureds, lacked standing to recover PIP benefits. The providers were only incidental beneficiaries, not parties to the policies. The assignment of benefits was invalid without Parkway's prior written consent. 330 N.J. Super. at 89.

Dr. Bolz invites our attention to *Marvin v. State Farm Mutual Automobile Insurance Co.,* 894 S.W.2d 712 (Mo. App. 1995). Relying on *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 528 P.2d 1198 (1974), the Missouri Court of Appeals in *Marvin* said that an assignment passes all the assignor's title or interest in the subject matter to the assignee and divests the assignor of all right of control over the subject matter. 894 S.W.2d at 713. In *Marvin,* State Farm paid medical benefits to its insured. The insured had assigned the benefits to Midtown Chiropractic Clinic. State Farm had to pay twice. *Marvin* held that State Farm should have paid the clinic since its insured had assigned her rights to the clinic. 894 S.W.2d at 713. *Marvin* is not helpful to Dr. Bolz because the State Farm policy in *Marvin* apparently did not contain a non-assignment clause. The applicability of such a clause, which is our issue here, was not an issue in Marvin.

I disagree with the majority's conclusion that K.S.A. 40-439 and K.S.A. 40-440 support Dr. Bolz' position. Both statutes relate to life and accident insurance. The relevant statutory language of K.S.A. 40-439 is:

"No provision in K.S.A. 40-434 and 40-435 or any other law shall be construed as prohibiting *a person whose life is insured* under a policy of group life or accident and health insurance or the policyowner *of an individual life or accident and health policy from making an assignment* of all or any part of his rights and privileges under such policy . . . ." (Emphasis added.)

K.S.A. 40-440 says:

"This act acknowledges, declares and codifies the existing right of assignment of interests under *individual and group life and accident and health insurance policies."* (Emphasis added.)

No similar provision authorizing assignment of a policy interest is found in the KAIRA. See K.S.A. 40-3101 *et seq.* The detailed no-fault insurance provisions of the KAIRA, including PIP benefits, were created by the legislature. See *Manzanares v. Bell,* 214 Kan. 589, Syl. ¶ 16, 522 P.2d 1291 (1974) (upholding the constitutionality of the no-fault insurance act). K.S.A. 40-3107, the key statute here, relates to motor vehicle liability insurance. By enacting the KAIRA, the legislature created a statutory scheme that replaced, at least in part, traditional common-law principles of tort liability. For example: (1) Under the KAIRA every policy of insurance issued by an insurer to a Kansas resident must include PIP benefits, K.S.A. 40-3107(f); (2) the KAIRA contains a prompt payment requirement, K.S.A. 40-3110(a) (PIP benefits are "due and payable as loss accrues, upon receipt of reasonable proof of such loss."); (3) under K.S.A. 40-3110(b), PIP benefits are overdue if not paid within 30 days after the insurer receives written notice of a covered loss, unless the insured has "reasonable proof to establish that it is not responsible for the payment"; (4) overdue payments accumulate simple interest at the rate of 18% per annum, K.S.A. 40-3110(b); and (5) reasonable attorney fees are provided "if the court finds that the insurer . . . unreasonably refused to pay the claim or unreasonably delayed in making proper payment." K.S.A. 40-3111(b); *DiBassie v. American Standard Ins. Co. of Wisconsin,* 8 Kan. App. 2d 515, 522, 661 P.2d 812 (1983).

I do not take issue with the general proposition of contract law relating to the assignment of a chose in action relied on by Dr. Bolz. As I have noted, the legislature has addressed assignments in group and individual life and accident policies. See K.S.A. 40-439; K.S.A. 40-440. However, the legislative prerogative should trump the majority's broad application of the chose-in-action public policy argument.

The majority has advanced *Brenner v. Oppenheimer & Co., Inc.,* 273 Kan. 525, 44 P.3d 364 (2002), as a reason for reversing the district court here. *Brenner* was decided 3 months after this case

was argued and submitted. *Brenner* is a choice of law case testing "the strength of Kansas public policy in the area of securities regulation." 44 P.3d at 377. In *Brenner,* investors brought an action against Oppenheimer, a clearing broker, and employees of the introducing broker for violation of K.S.A. 17-1255 of the Kansas Securities Act in the sale of unregistered nonexempt securities.

*Brenner* concluded:

"Because Kansas' public policy strongly favors the regulation of securities transactions for the protection of Kansas investors, we hold the choice of law provision to be invalid on public policy grounds. Thus, we overturn the district court's decision and hold the choice of law provision in Oppenheimer's standard form agreement invalid." 44 P.3d at 380.

Although the facts in *Brenner* disqualify it as an apt precedential candidate for resolution of the KAIRA/PIP issue here, I find nothing in *Brenner* that is incompatible with affirmance of the district court. *Brenner* acknowledged and followed the legislative policy established by K.S.A. 17-1255 (unlawful to offer or sell certain unregistered securities).

I conclude that as a matter of policy the legislature, not this court, is the proper body to authorize the assignment of post-loss PIP benefits to a health care provider in face of a nonassignment clause in a KAIRA no-fault policy. A sampling of legislative treatment of assignments in other states shows that traditionally legislatures, not courts, have spoken specifically to the question of no-fault PIP benefit assignments.

The Uniform Motor Vehicle Accident Reparations Act (UMVARA) authorizes the assignment of benefits. Under the UMVARA, allowable expense benefits may be paid directly to persons supplying services. The claimant-insured may also assign any right to benefits accruing in the future to the extent the benefits are for the cost of services. UMVARA §§ 23(a), 29(2) (1972); 14 U.L.A. 90, 101 (1990).

*Kentucky*: "Medical expense benefits may be paid by the reparation obligor directly to persons supplying products, services, or accommodations to the claimant, if the claimant so designates." Ky. Rev. Stat. Ann. § 304.39-210 (Mitchie/Bobbs-Merrill 1998).

*Michigan*: "An agreement for assignment of a right to benefits payable in the future is void." Mich. Comp. Laws § 500.3143 (1993). The statute serves only to ban the assignment of benefits payable in the future and not those that are past due or presently due. *Pro. Rehab. Associates v. State Farm,* 228 Mich. App. 167, 172, 577 N.W.2d 909 (1998).

*New Jersey*: Personal injury protection benefits shall "[n]ot be assignable, except to a provider of service benefits under this section in accordance with policy terms approved by the commissioners, nor subject to levy, execution, attachment or other process for satisfaction of debts." N.J. Stat. Ann. § 39:6A-4 (e)(2) (West 2002).

*Colorado*:

"A policy of motor vehicle insurance which provides coverage pursuant to [the No-Fault Act] shall allow, but not require, an insured under the policy to assign, in writing, payments due under the policy to a licensed hospital or other licensed health care provider for services provided to the insured which are covered under the policy." Colo. Rev. Stat. (1993 Supp.) § 10-4-708.4(1)(a).

*Florida*: Florida's no-fault law, Fla. Stat. § 627.736(5)(a) (1999), provides that an insurer may pay for services directly to the provider rendering the treatment if the insured receiving the treatment has countersigned the invoice, bill, or claim form approved by the Florida Department of Insurance. See *Hartford Ins. Co. v. St. Mary's Hosp., Inc.,* 771 So. 2d 1210, 1212 (Fla. App. 2000) (plaintiff hospital had no right to benefits in absence of assignment from insured).

McFARLAND, C.J., and LARSON, J., join in the foregoing dissent.