NOT DESIGNATED FOR PUBLICATION

No. 129,186

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

INJURY TREATMENT CENTERS of KANSAS CITY, LLC,
*Appellant*,

v.

TRISTAN MEDLIN and DIPASQUALE MOORE, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Submitted without oral argument. Opinion filed May 8, 2026. Affirmed.

*Kyle A. Branson*, of Mogenson & Branson, LLC, of Mission, for appellant.

*Kirk T. May*, of GM Law PC, of Kansas City, Missouri, for appellees.

Before MALONE, P.J., BRUNS and HURST, JJ.

PER CURIAM: Injury Treatment Centers of Kansas City, LLC., appeals the district court's grant of summary judgment in favor of Tristan Medlin and DiPasquale Moore, LLC. Specifically, the district court found that the substantive law of Missouri controlled the interpretation of the assignment of benefits that Injury Treatment Centers seeks to enforce. As a result, the district court determined that the assignment of benefits was void and unenforceable. Based on our review of the record on appeal, we find that the district court properly granted summary judgment in this case. Thus, for the reasons set forth in this opinion, we affirm.

1

FACTS

*The Parties*

Injury Treatment Centers of Kansas City, LLC, (Injury Treatment Centers) is a Missouri limited liability company that provided chiropractic care to Donald Knight after he was injured in an accident. Knight—who is not a party to this case—is a resident of Kansas who received treatment and executed an assignment of insurance benefits in favor of Injury Treatment Centers at its office in Kansas City, Missouri. Tristan Medlin is an attorney—licensed in Kansas and Missouri—who Knight retained to represent him in his personal injury claim arising out of the accident. Medlin is employed by DiPasquale Moore, LLC (DiPasquale Moore)—a Missouri limited liability company—that represents clients in Kansas and Missouri.

*The Accident and Assignment*

On May 17, 2022, Knight was injured when the Ride KC bus that he was a passenger on collided with another vehicle in Johnson County. The police report listed National Union Fire Insurance Co. (National Union) as the insurer for the Ride KC bus. Additionally, the Government Employees Insurance Company (GEICO) was listed as the insurer for the other vehicle. Knight retained Medlin and DiPasquale Moore to represent him on his claims stemming from the accident. And they subsequently sent demand letters to GEICO and to a third-party administrator for National Union.

On March 1, 2023, Knight sought chiropractic treatment from Injury Treatment Centers—for injuries that he claimed were caused by the accident—at its office in Kansas City, Missouri. Prior to receiving treatment, Knight executed an assignment of benefits to Injury Treatment Centers that purportedly assigned the provider the "right to make [a] claim for benefits and payments to which [he] is entitled under any policy of insurance." The assignment also purportedly authorized Injury Treatment Centers "to

2

prosecute/litigate a claim in [Knight's] name . . . and . . . [to] compromise, settle, commence an action or otherwise resolve such claim as in Providers' discretion it deems fit." But the assignment of benefits did not include a severability clause.

After Knight completed his treatment on March 29, 2023, Injury Treatment Centers billed him for $9,820 and submitted notice of a lien to GEICO. Unfortunately, neither the GEICO nor the National Union insurance policies are in the record on appeal. As such, we do not know the nature and extent of the benefits or payments that Knight may have been entitled to receive under the terms of these policies. Although the record reflects that Injury Treatment Centers knew about the accident, it does not indicate what insurance information—if any—Injury Treatment Centers received from Knight or obtained from other sources.

In April of 2023, Medlin requested and received Knight's records and bills from Injury Treatment Centers. After receiving a settlement offer from GEICO, Medlin met with Knight to discuss the benefits and risks of settlement with only one of the insurance companies. Ultimately, Knight decided to accept the settlement and signed a release of all claims arising out of the accident on August 22, 2023. Thereafter, Medlin deposited a check in the amount of $27,500 from GEICO into DiPasquale Moore's Interest on Lawyers Trust Account (IOLTA) that was established pursuant to Missouri law.

About a month later, Medlin received a $9,000 check for Personal Injury Protection (PIP) benefits from National Union's third-party administrator. This check was also deposited into the law firm's Missouri IOLTA account. On September 29, 2023, DiPasquale Moore sent Injury Treatment Centers a check in the amount of $6,210.54 that was designated as payment "for full and final satisfaction" of the notice of lien that was sent to GEICO.

*The Lawsuit*

Before the district court, Injury Treatment Centers alleged that Medlin and DiPasquale Moore intentionally converted Knight's PIP benefits in the sum of $3,609.46. It is further alleged that Medlin and DiPasquale Moore tortiously interfered with the assignment of benefits that Knight signed. In response, Medlin and DiPasquale Moore requested that the district court declare "that the Assignment of Benefits is [void] under Missouri law."

On November 11, 2024, Medlin and DiPasquale Moore filed a motion for summary judgment. Initially, the district court denied the summary judgment motion. But after hearing testimony, receiving evidence, and listening to oral arguments at a bench trial, the district court reconsidered its ruling and granted summary judgment in favor of Medlin and DiPasquale Moore. In doing so, the district court issued a 19-page written journal entry of judgment.

In its journal entry, the district court made findings of fact and conclusions of law. Significantly, it concluded that—under the rule of *lex loci contractus*—Missouri substantive law controls the enforceability of the assignment of benefits executed by Knight. Applying Missouri law, the district court found the assignment of benefits to be void and unenforceable. It further found that this was not a case where Kansas public policy outweighed the application of Missouri substantive law. The district court then explained why it would still rule in favor of Medlin and DiPasquale Moore on both the tortious interference and conversion claims, assuming that the assignment of benefits was not void.

Thereafter, Injury Treatment Centers timely appealed.

4

ANALYSIS

The fundamental issue presented on appeal is whether the district court incorrectly granted summary judgment in favor of Medlin and DiPasquale Moore against Injury Treatment Centers. We review a summary judgment decision de novo and apply the same legal standards as the district court. *Schreiner v. Hodge*, 315 Kan. 25, 30, 504 P.3d 410 (2022). Summary judgment is appropriate where the pleadings, depositions, affidavits, and other supporting materials found in the record on appeal show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 315 Kan. at 30.

*Conflict of Laws*

This case presents us with a conflict-of-laws question. Resolution of a conflict-of-laws issue involves a question of law over which we exercise unlimited review. *M & I Marshall & Ilsley Bank v. Higdon*, 319 Kan. 572, 576, 556 P.3d 498 (2024). In *M & I Marshall & Ilsley Bank*, the Kansas Supreme Court reiterated that Kansas courts traditionally follow the Restatement (First) of Conflict of Laws (1934). 319 Kan. at 576. Where an action has been filed in Kansas, a court must make an initial determination of "whether a given question is one of substance or procedure and then select[] the law of a jurisdiction based on the location of a certain event." 319 Kan. at 576 (citing Restatement [First] of Conflict of Laws §§332 and 378).

Substantive law is "'[t]he part of the law that creates, defines, and regulates the rights, duties and powers of the parties.'" *M & I Marshall & Ilsley Bank*, 319 Kan. at 577 (quoting Black's Law Dictionary 1729 [11th ed. 2019]). On the other hand, procedural law is "'[t]he rules that prescribe the steps for having a right or duty judicially enforced. . . .'" 319 Kan. at 577 (quoting Black's Law Dictionary 1457 [11th ed. 2019]). Here, we find the

5

question of whether the assignment of benefits is enforceable to be a matter of substantive law since it impacts the rights and duties of the parties.

Kansas follows the principle of *lex loci contractus*, which means that "the law of the state where the contract is made governs." *M & I Marshall & Ilsley Bank*, 319 Kan. at 576 (citing Restatement [First] of Conflict of Laws § 332). The assignment of benefits—which is the underlying basis for its tortious interference with a contract and conversion claims—was "made" when Knight signed the agreement at Injury Treatment Centers' office in Kansas City, Missouri. Consequently, we find that Missouri law governs our interpretation of Knight's assignment of benefits. See 319 Kan. at 576.

*Application of Missouri Law*

In *Eisenmenger v. National Indemnity Company*, 699 S.W.3d 583, 587-88 (Mo. Ct. App. 2024), the Missouri Court of Appeals found an assignment of insurance benefits to be void based on Missouri public policy. See *Perea v. Progressive Northwestern Ins. Co.*, 678 S.W.3d 167, 176 (Mo. Ct. App. 2023). That assignment of benefits is substantially similar—if not identical—to the assignment of benefits in this case. See 699 S.W.3d at 587-88. In *Eisenmenger*, passengers riding on a party bus were injured when another vehicle struck the bus before leaving the scene of the accident. Afterwards, several of the injured passengers sought chiropractic treatment from Injury Treatment Centers.

Prior to receiving treatment, the patients were required by Injury Treatment Centers to execute assignments for each of their respective rights to insurance benefits. Like Knight's assignment of benefits, the compulsory assignments, in *Eisenmenger*, assigned the patient's purported "right to make [a] claim for benefits and payments to which [they are] entitled under any policy of insurance." See 699 S.W.3d at 585. In addition, the assignment of benefits also authorized Injury Treatment Centers "to

6

prosecute/litigate a claim in [the patient's] name . . . and . . . [to] compromise, settle, commence an action or otherwise resolve such claim as in Providers' discretion it deems fit." See 699 S.W.3d at 585. And neither the assignment of benefits executed by Knight in this case nor the patients' assignments in *Eisenmenger* contained a severability clause.

Injury Treatment Centers attempted to enforce the assignments against National Indemnity Company (National Indemnity) for the purpose of obtaining reimbursement of expenses for chiropractic treatment provided to the injured patients. After National Indemnity declined to reimburse Injury Treatment Centers, the healthcare provider filed a breach of contract suit based on the assignments. The circuit court subsequently granted judgment on the pleadings in favor of National Indemnity. It determined that the assignments' broad language rendered them void under Missouri law since it allowed Injury Treatment Centers to go after third-party tortfeasor coverage alongside first-party PIP benefits. 699 S.W.3d at 585.

On appeal, the Missouri Court of Appeals agreed that the assignments' language was so far-reaching as to "encompass any policy of insurance which might provide payments to the Patients." 699 S.W.3d at 587. Further, the court found that "the second paragraph of the [a]ssignments is so broad that it empowers Providers . . . to bring suit in Patient's name, control the resolution of that lawsuit, and collect the resulting insurance proceeds, including proceeds directly tied to Patient's personal injuries." 699 S.W.3d at 588. And since the assignments did not contain a severability clause, the circuit court reasoned that it could not "disregard the aspects of the [a]ssignments that are void as against public policy." 699 S.W.3d at 588. As a result, the Missouri Court of Appeals concluded that "the [a]ssignment[s] and any claims asserted thereunder are void as against Missouri public policy." 699 S.W.3d at 588.

Injury Treatment Centers asserts that the law in Missouri is the same as the law of Kansas regarding the assignment of PIP benefits. The Missouri Court of Appeals has

7

correctly noted that Kansas law "allows for the assignment of PIP benefits." *Perea*, 678 S.W.3d at 176 (citing *Bolz v. State Farm Mut. Auto Ins. Co.*, 274 Kan. 420, 435, 52 P.3d 898 [2002]). However, Missouri law does not support the assignment of PIP benefits the same way Kansas law does. See *Eisenmenger*, 699 S.W.3d at 587.

Nevertheless, Injury Treatment Centers suggests that Kansas public policy requires us to find that the assignment of benefits—executed by Knight—is enforceable regardless of the principle of *lex loci contractus*. In *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 270-73, 777 P.2d 1259 (1989), our Supreme Court recognized an exception to the general rule in which Kansas law must be applied rather than the substantive law of another state. Specifically, the relevant state's substantive law is not applied if that law violates a "strong  public policy" of Kansas. *Brenner v. Oppenheimer & Co., Inc.*, 273 Kan. 525, 543, 44 P.3d 364 (2002). A "strong public policy" is one that is "so definite and fixed that its existence is not subject to any substantial doubt." 273 Kan. at 543.

The primary objective of the public policy exception "'is to prevent wrongful acts against the citizens of the State of Kansas.'" 273 Kan. at 542. But the public policy exception is to be narrowly construed and rarely invoked. *Raskin v. Allison*, 30 Kan. App. 2d 1240, 1245, 57 P.3d 30 (Kan. App. 2002). In this case, we do not find that applying Missouri law violates the public policy of Kansas. This is especially true because the assignment of benefits was executed in Missouri; the party seeking to enforce the assignment is a Missouri limited liability company; the underlying medical services were provided in Missouri; and the defendants provided legal services to Knight—who is not a party to this action—in Missouri.

*Tortious Interference and Conversion Claims*

Injury Treatment Centers also contends that Medlin and DiPasquale Moore tortiously interfered with its purported right—under the assignment of benefits—to be reimbursed for the professional services it rendered to Knight. Likewise, Injury Treatment Centers insists that Medlin and DiPasquale Moore converted the PIP benefits which Knight purportedly owed as a result of the assignment of benefits. In other words, both claims were based on the enforceability of the assignment of benefits. But we have found the assignment of benefits to be void pursuant to Missouri law. See *Eisenmenger*, 699 S.W.3d at 588.

Tort claims are governed by the principle known as *lex loci delicti* or the law of the place where the injury occurs. *M & I Marshall & Ilsley Bank*, 319 Kan. at 576. Injury Treatment Centers suggests that the underlying accident in Kansas necessitates the application of Kansas law in this case. But as Medlin and DiPasquale Moore appropriately point out, the claims asserted in this action do not arise out of the accident. They arise out of Knight's assignment of benefits—executed in Missouri. In fact, none of those involved in the accident are parties to this action nor are the insurance companies that insured the vehicles.

In summary, we find that Knight's assignment of benefits is void and unenforceable. See *Eisenmenger*, 699 S.W.3d at 588. We also find that the assignment cannot be used as a basis to assert claims against Medlin and DiPasquale Moore for tortious interference or conversion. Finally, we take no position on what remedies—if any—that Injury Treatment Centers may have against Medlin and DiPasquale Moore under Missouri law.

Therefore, we affirm the district court's decision to grant summary judgment in favor of Medlin and DiPasquale Moore.

Affirmed.